```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF GEORGIA
                         COLUMBUS DIVISION
```

EROL SOBUTAY,                          *

        Plaintiff,             *

vs.                                    *
                              CASE NO. 4:06-CV-87(CDL)
                            *
INTERMET INTERNATIONAL, INC. and
COLUMBUS FOUNDRY, L.P.,                *

        Defendants.            *

                            *

## O R D E R

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. 23). For the reasons set forth below, this motion is granted as to all of Plaintiff's federal claims.

### FACTUAL BACKGROUND

Plaintiff Erol Sobutay, an employee of Defendant Columbus Foundry, L.P., is of Arab and Hispanic descent and is from Istanbul, Turkey. Plaintiff was hired by Defendant as a maintenance mechanic on June 17, 1995 and was assigned to maintenance supervisor Keith Eason approximately a year and a half later. Plaintiff worked directly under Eason for about six years, but has been primarily reporting to supervisor Brian James for the last five years. Although Eason was no longer Plaintiff's assigned supervisor, Eason still had some supervisory authority over Plaintiff. (Pl.'s Resp. Br. in Opp. to Defs.' Mot. for Summ. J. 6 n.1 [hereinafter Pl.'s Resp.].)

Plaintiff complains of a number of discriminatory incidents that occurred during his employment, all of which involve Eason in some way. First, Plaintiff alleges that Eason regularly called him a "wetback" in 1997 and 1998. Plaintiff also claims that a less-qualified white employee was promoted over him, on Eason's recommendation, in 1997 or 1998.[1] In 2000, Plaintiff alleges that Eason called him a "raghead."

Plaintiff was terminated in 2000 because he received four written reprimands for plant violations in a one-year period. Plaintiff contends that Eason issued most of these reprimands for insignificant rule violations. As a result, Plaintiff filed an EEOC charge and a grievance with the union, and was subsequently reinstated with full seniority. The most recent alleged discriminatory incident occurred in August of 2005, when Eason called Plaintiff a "sand nigger."

Plaintiff filed an EEOC charge on September 2, 2005 based upon his supervisor's frequent use of racial slurs and because he was disciplined for being tardy on August 19, 2005. Plaintiff amended his charge on October 25, 2005, adding a claim based on his

---

[1]Plaintiff specifically alleges that Jason Hill, a less-qualified junior employee, was promoted to "lead man" over Plaintiff, on Eason's recommendation. Plaintiff recalls that this failure to promote occurred in 1997 or 1998. (Pl.'s Dep. 29:12, Feb. 28, 2007.) Hill recalls that he was promoted to lead man in February 2001. (Hill Dep. 9:24-10:1, Mar. 1, 2007.)

2

assignment to a dangerously hot work area on August 19, 2005.[2] The EEOC investigated Plaintiff's charge and determined it was unable to conclude whether any violations occurred.

Plaintiff received his notification of his right to sue on March 14, 2006 and originally filed suit in the Superior Court of Muscogee County on June 12, 2006. Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331 and 1441. Plaintiff subsequently added Columbus Foundry as a Defendant and amended his complaint twice, once to add a racial discrimination charge based on Plaintiff being Hispanic and once to voluntarily dismiss claims for which he was unable to discover sufficient evidence.[3] Plaintiff's remaining claims

---

[2] Plaintiff admits that he was properly disciplined for being tardy. (Pl.'s Dep. 39:11-14.) Plaintiff also produces no evidence that his assignment to a dangerously hot work area was based on racial animus.

[3] Defendants argue in their Motion for Summary Judgment that Intermet International is not Plaintiff's employer and accordingly should be dismissed from the lawsuit. (Br. of Defs.' in Supp. of Mot. for Summ. J. 2 n.1 [hereinafter Defs.' Br.].) In his Motion to Add a Party Defendant, Plaintiff admits he "remains unsure as to the proper party Defendant(s)" and filed the motion in order to comply with timing requirements of the Court's Scheduling Order. (Pl.'s Mot. to Add a Party Def. ¶ 8.) However, in support of his motion to add Columbus Foundry as a party, Plaintiff indicates that (1) Defendants' Corporate Disclosure reveals a relationship between the companies, (2) the parties have the same registered agent, and (3) Columbus Foundry, L.P. is registered with the Secretary of State with Intermet International, Inc. listed as its "Member/Manager." (*Id.* at ¶¶ 3, 5, 6.)
Defendants have consistently denied that Intermet International is Plaintiff's employer. In support of their denials, however, Defendants submitted only an affidavit indicating that Intermet U.S. Holdings, Inc. replaced Intermet International as Columbus Foundry's general partner in 2001. (Miller Aff. ¶ 3, April 13, 2007.) Defendant argues that even if Intermet International remained Columbus Foundry's general partner, Intermet International would still not be Plaintiff's employer. (*Id.* at ¶ 4.) The Court finds that genuine issues of material fact exist as to whether Intermet International is Plaintiff's employer. Thus, it is not entitled to summary judgment on this basis. Accordingly, for purposes of

3

allege: (1) racial and national origin discrimination in violation of 42 U.S.C. § 1981; (2) racial and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; (3) hostile work environment in violation of Title VII and § 1981; and (4) state law claims based upon *respondeat superior*, vicarious liability, and ratification.

DISCUSSION

## I. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact, and may do so by pointing to an absence of evidence to support an essential element of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party has met its burden, the burden shifts to the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The reviewing court should grant summary judgment only if the combined body of evidence, viewed in the light most favorable

---

Defendants' motion for summary judgment, the Court finds both Defendants to be Plaintiff's employer.

    Plaintiff voluntarily dismissed his claims for religious discrimination and his claims under § 1983, § 1985, and § 1986. (Pl.'s Resp. nn. 1, 2.)

4

to the nonmoving party, would not permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## II.  Title VII and Section 1981 Claims[4]

### A.  Failure to Promote

Plaintiff alleges that during the course of his employment, he was required to train lesser-qualified employees who were then promoted ahead of Plaintiff to superior positions. Plaintiff further alleges that this failure to promote was based on racial animus. However, Plaintiff identifies only one specific instance of a failure to promote, which occurred—at the latest—in February of 2001.

To the extent that Plaintiff's § 1981 claim is based on this alleged failure to promote, it is untimely. The statute of limitations under 42 U.S.C. § 1981 is four years. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004). Plaintiff filed his original complaint in Muscogee County Superior Court on June 12, 2006. Because Plaintiff filed his § 1981 claim for failure to promote

---

[4] Plaintiff makes claims under both Title VII and § 1981. Because both claims are analyzed under the same legal standard, they will be discussed together. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes have the same requirements of proof and use the same analytical framework[.]"). However, § 1981 claims alleging discrimination on the basis of national origin are not cognizable. *See, e.g., Bullard v. O.M.I. Ga., Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) ("[S]ection 1981 does not encompass discrimination based solely on national origin."). Thus, to the extent that Plaintiff alleges that national origin discrimination is the basis for his § 1981 claims, the Court grants Defendant's Motion for Summary Judgment on those claims.

5

more than four years after the incident occurred, Plaintiff's claim is time-barred. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's § 1981 failure to promote claim.

Plaintiff's Title VII claim for disparate treatment based on the alleged failure to promote is also untimely.[5] Under Title VII, a charge of discrimination must be filed with the EEOC within 180 or 300 days of the date the alleged discriminatory incident "occurred." 42 U.S.C. § 2000e-5(e)(1). In Georgia, a non-deferral state, EEOC charges generally must be filed within 180 days. *See, e.g., Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003). "A discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s].'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Thus, a plaintiff is required to "file a charge within [] 180 . . . days of the date of the act or lose the ability to recover for it." *Id.*

In this case, because Plaintiff filed his charge with the EEOC on September 2, 2005—clearly more than 180 days after the allegedly discriminatory failure to promote—he has lost the ability to recover for the incident. Accordingly, Defendants' Motion for Summary

---

[5]Plaintiff specifically asserts a disparate treatment claim based on this discrete instance of failure to promote. Plaintiff also mentions his termination, which is a potential instance of disparate treatment. As with Plaintiff's disparate treatment claim based on his failure to be promoted, any wrongful termination charge raised by Plaintiff's submissions to the Court is also time-barred, either under the four year statute of limitation for § 1981 claims or under the 180 day limitation for EEOC charges.

6

Judgment is granted to the extent Plaintiff's Title VII claims depend on Defendants' failure to promote Plaintiff to lead man.[6]

B. Hostile Work Environment

Plaintiff further alleges that he was subjected to a racially hostile work environment. Plaintiff's submissions to the Court raise several incidents that could be considered evidence of a hostile work environment: (1) the racial slurs used by Keith Eason in 1997, 1998, 2000, and 2005; (2) Plaintiff's 2000 termination for allegedly race-based reasons; and (3) the failure to promote Plaintiff to lead man in 2001.[7]

---

[6] Plaintiff also failed to raise the failure to promote in his EEOC charges and specifically indicated that the alleged discrimination took place between March 2 and September 2 of 2005. However, in light of the Court's decision that Plaintiff's claims based on a failure to promote are time-barred, the Court need not decide whether Plaintiff's judicial complaint is encompassed within the scope of his EEOC charge.

[7] Plaintiff mistakenly believed Defendants failed to address his racially hostile environment claim, and therefore only briefly addressed the issue in his response brief. (*See* Pl.'s Resp. 15.) However, Plaintiff raises these aforementioned incidents of discrimination in his statement of facts, without discussing to which claims they apply. Because the Court is required to examine the evidence in the light most favorable to the non-moving party, the Court will discuss the issues these particular incidents present.
Plaintiff also contends that at trial, he "will present a myriad of other circumstantial evidence demonstrating racial animus." (Pl.'s Resp. 10 n.5.) In support of this contention, Plaintiff's counsel submitted an affidavit explaining that he had spoken to, or anticipated speaking to, numerous witnesses "and obtained information that strongly supports Plaintiff's claims, including, but not limited to the Hostile Work Place environment and circumstantial evidence of discrimination." (Stubbs Aff. ¶¶ 4-7, May 30, 2007.) The Court will not consider counsel's affidavit because it is simply restates counsel's beliefs about the quality of the evidence he will later produce. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[S]tatements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment.'") (internal citations omitted). To the extent Plaintiff's allegations are substantiated by the

7

*1. Composition of Plaintiff's Claim*

Defendant contends that the racial slurs that occurred in 1997, 1998, and 2000 may not be used to support Plaintiff's hostile work environment claim, considering the statute of limitations under § 1981 and the EEOC's 180 day filing requirement. Thus, the Court must address the composition of Plaintiff's claim before addressing its merits. Unlike claims based on discrete instances of discriminatory conduct, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. 2000e-5(e)(1)). Thus,

> [i]t does not matter, for the purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id*. In other words, "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period[,]" the entire hostile work environment claim will be considered timely. *Id.* at 122.

In *Chambless v. Louisiana-Pacific Corporation*, 481 F.3d 1345 (11th Cir. 2007), the Eleventh Circuit examined the relationship between discrete instances of discriminatory conduct and hostile work

---

pleadings, depositions, and affidavits on file, the Court has construed all evidence in the light most favorable to Plaintiff.

8

environments in light of *Morgan*.  In *Chambless*, the plaintiff filed a lawsuit alleging that her employer "denied her promotions due to her age and gender, subjected her to a sexually hostile work environment, and retaliated against her for bringing discrimination complaints[.]" *Id.* at 1347.  Two years later, the plaintiff filed another lawsuit, alleging that her employer had terminated her in retaliation for filing the first lawsuit and an EEOC charge.  *Id.*  Plaintiff also described "numerous" incidents of sexual harassment, including "sexual touching, jokes, and propositions by male employees; a male coworker raising her dress and placing his head between her legs; ridicule because of her pregnancy, social isolation; and disparate job conditions . . . ." *Id*.  The magistrate judge consolidated the two lawsuits and dismissed the plaintiff's hostile work environment claim as untimely.  *Id.*

The Eleventh Circuit first noted that the plaintiff's allegations of retaliation and failure to promote were timely.  *Id.* at 1349.  However, the non-discrete acts that comprised Plaintiff's hostile work environment claim occurred outside the limitations period.  *Id*.  The court recognized that under *Morgan*, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability if an act relating to the claim occurred within the filing period."  *Id.* at 1349-50 (internal citation omitted).  Thus, "[t]he pivotal question" became "whether the timely discrete acts are sufficiently related to the hostile work environment claim."

9

*Id.* at 1350. The court found that the plaintiff's gender and age-based retaliation and failure to promote claims were not sufficiently related to plaintiff's sexually hostile environment claim. *Id.* The court affirmed the magistrate's decision that the hostile environment claim was time-barred because "[t]he timely discrete acts are [] not part of the sexual harassment hostile work environment claim and therefore cannot save the earlier, untimely acts that comprise that claim." *Id.*

In this case, the only act that occurred during the limitations period was Eason's racial slur in 2005. Accordingly, the Court finds that the only incidents that are sufficiently related to the timely-filed hostile work environment claim are Plaintiff's allegations that Eason used racial slurs in 1997, 1998, and 2000. Just as the Eleventh Circuit determined that the discrete acts alleged in *Chambless* were not sufficiently related to the plaintiff's hostile environment claim, the Court finds Plaintiff's termination and failure to be promoted are not sufficiently related to his hostile environment claim. Therefore, the Court will not consider those incidents in its analysis of whether Defendant is liable for a racially hostile work environment.

### 2. Merits of Plaintiff's Claim

In support of his allegations of a racially hostile environment, Plaintiff contends that Keith Eason has frequently used slurs to "not only me, [but] to other employees" over "years and years." (Pl.'s Dep. 58:1-6.) Specifically, Plaintiff alleges that Keith Eason called

10

him a "raghead" in the year 2000 and a "sand nigger" on August 17, 2005. (Pl.'s Dep. 53:19-54:14.) Plaintiff also alleges that Eason called him a "wetback" "pretty regularly" in 1997 and 1998. (Pl.'s Dep. 60:14-24.)

For Plaintiff to recover on his hostile work environment claims, he must prove: (1) that he belongs to a protected group; (2) that he has been subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic (in this case, race and national origin); (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory and abusive working environment; and (5) that a basis for holding the employer liable under either a theory of vicarious or direct liability exists. *See, e.g., Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000) (internal citation omitted).

In this case, Plaintiff cannot demonstrate that the racial harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment. Whether alleged conduct is sufficiently severe or pervasive has both a subjective and objective component. *See Gupta*, 212 F.3d at 583. "Accordingly, a plaintiff must establish not only that []he subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive." *Id.* (internal citation omitted). A court must examine four factors in determining whether harassment is objectively severe: "(1) the frequency of the conduct;

11

(2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 584 (internal quotation marks and citation omitted).

Even when looking at the evidence in the light most favorable to Plaintiff, the Court cannot conclude that the level of discrimination Plaintiff experienced was sufficiently severe or pervasive to alter the terms and conditions of his employment. First, the conduct of which Plaintiff complains is not "frequent." Plaintiff has been working at Columbus Foundry since June 17, 1995. (Pl.'s Dep. 18:24-19:1.) In the ten years between Plaintiff's hiring and the filing of his most recent EEOC charge, Plaintiff can only specifically identify three racial slurs directed towards him. While there may be no "magic number" of racially hostile incidents that combine to form a racially hostile environment, three instances over a ten-year period stand in stark contrast to the level of conduct that the Eleventh Circuit has found to be actionable. *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (finding sufficient evidence of frequency where supervisor with whom plaintiff was required to interact daily "hurled the ethnic slurs at [the plaintiff] three to four times a day"); *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (holding that "roughly fifteen separate instances of harassment over the course of four

12

months" was sufficient to demonstrate a sexually harassing environment).

Plaintiff also has not indicated that these incidents were particularly "severe," physically threatening, or humiliating. "The Supreme Court has instructed that Title VII is only implicated in the case of a workplace that is 'permeated with discriminatory intimidation, ridicule, and insult,' not where there is the 'mere utterance of an . . . epithet.'" *Miller*, 277 F.3d at 1276-77 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted in original)) (alteration in original). The Eleventh Circuit has held that when derogatory names are used by a supervisor "in an intimidating manner . . . during the course of berating [an employee] for his job performance, or when they were 'arguing with him,' were 'mad with him,' or were 'taunting him[,]'" a hostile environment may be sufficiently severe. *Miller*, 277 F.3d at 1277. In this case, however, Plaintiff only specifically identifies one instance in which Eason used a racial slur to reprimand Plaintiff in the course of his job duties. (Pl.'s Dep. 53:9-55:22.) Moreover, there is no indication in Plaintiff's description of Eason's behavior that the conduct was especially humiliating or physically threatening. (*See generally* Pl.'s Dep. 53-60). Instead, the conduct of which Plaintiff complains consists of isolated instances of epithets.

Finally, Plaintiff produces no evidence that any racially hostile work environment adversely affected his job performance. Plaintiff

13

is still employed by Defendant, and he has been directly supervised by Brian James for the last several years.  This new arrangement is apparently mutually agreeable—Plaintiff has no complaints about James, and James has been satisfied with Plaintiff's work.  (James Dep. 10:18-20, Mar. 1, 2007; Pl.'s Dep. 83:16.)

While even infrequent use of racial slurs should not be condoned, their limited use in this case was neither objectively severe nor pervasive enough to rise to the level of actionable conduct under either Title VII or § 1981.  Thus, Defendant's Motion for Summary Judgment is granted as to Plaintiff's hostile work environment claims.

CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment (Doc. 23) with respect to all Plaintiff's federal claims.  Because this Order disposes of all of the federal claims in this case, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims and dismisses those claims without prejudice.

IT IS SO ORDERED, this 20th day of November, 2007.


                                               S/Clay D. Land
                                               CLAY D. LAND
                           UNITED STATES DISTRICT JUDGE